Ruffin, C. J.
dissent. Tamar Sanderlin had issue a legitimate son, Isaac Sanderlin, and an illegitimate daughter, named Zelia, who intermarried with Lemuel Sawyer. The propositus died without issue, leaving as her nearest relations, a brother and sister of her deceased father, who are the lessors of the plaintiff, also the said Isaac Sander*- *411 lin, under whom the defendant claims a share of the premises.
The question is, to which of these persons, if either, the premises descended. It seems to me that, being in equal degree, the paternal uncle and aunt and the maternal uncle are co-heirs. It is to be premised that the question depends altogether upon our act of descents. The act not only professes to regulate the descent of inheritances, that is, of all inheritances, but it actually provides for every possible case. The first section covers the case of lineal descents, and the fourth and fifth include every collateral descent, since all estates must be cither descended or purchased. The common law canons have therefore nothing to do with the subject, save only to furnish the rule for counting the degrees of kindred, so as to ascertain who is “ the next relation,” as expressed in the 6th canon. I admit, next, that descents from and to legitimates are alone within the purview of the act, except so far as it may be curtailed by the 10th rule, tar ken from the act of 1790, and therefore that this question turns upon the construction of that canon and its proper influence upon the construction of the others, as applied to cases that may arise out of the provision of the tenth. Undoubted!}', then, the lessors of the plaintiff, if not the sole heirs, are some of the heirs of the propositus, for by the 10th rule the illegitimate child of Zelia, or her issue, could not inherit from Tamar Sanderlin, because she left a legitimate son. Then the land devised by Tam'ar to the propositus was purchased and does not descend exclusively to her next collateral relations on the part of the testatrix under the 4th canon, but descends to her next relations of both lines, if there be such, according to the 5th rule. Therefore, the enquiry here is, whether Isaac Sanderlin, the maternal uncle of the propositus is one of her “ relations” within the meaning of the act. The 10th rule provides for descents from, to, and through bastards. The first part of it enacts, that the land of a *412 mother, not having legitimate children, should descend to her “bastard children and their representatives.” That is the case of lineal descent, and includes the children and their legitimate issue ad infinitum, and thus the natural connexion is made the legal one, in reference to lineal descents to the most remote degree.
The remainder of the canon relates to collateral descents in the case of bastardy. It is thus expressed: “If such illegitimate child shall die intestate without leaving a child, his or her estate shall descend to his or her brothers and sisters, born of the body of the same mother and their representatives, in the same manner as if they had been born in lawful wedlock.” It is obvious, upon the face of the act, that it is inartiflcially drawn and that it does not expressly cover all the cases that may arise out of the new principle it announces, that there may be collateral descents from and to bastard brethren and their issue. That is the principle of the canon; and a due respect to it should oblige the Court so to construe the act, as to sustain the principle, notwithstanding particular cases may, from the imperfection of language, not be distinctly expressed as provided for in it. Thus, it does not expressly provide, how it is to be when there are legitimate and illegitimate brethren. Yet it was held in Flintham v. Holder, 1 Dev. Eq. 345, as a matter of construction, that the legitimate inherit from the illegitimate. It was so held, because there was no reason for excluding them, after the law had allowed of inheritable blood between a bastard and any child of the same- mother; and therefore it was concluded, that the Legislature could not intend that the property, real and personal, of a bastard, should fall to the public as derelict, while there was any brother or sister of such bastard to succeed to it. To exclude an escheat was a most material consideration in the construction there adopted; for, as was observed in that case, our law leans against them — and that, not merely as a principle of judicial exposition, but as plain- *413 ]y developed in the enactments of the Legislature. Thus there is no exclusion of half-blood ; parents inherit from children, widows from husbands, and the nearest relation, who is a citizen, although there be a nearer alien one ; and bastard children inherit from mothers and from each other. By that case, then, Isaac Sanderlin would have been the heir of his illegitimate sister Zelia, had sho died without issue. Let that be fixed in the mind. Then let it be noticed that the act does not stop there. It not only says, that land shall descend from a bastard to a brother born of the same mother, but it goes on and says- if the brother be dead, it shall descend to his issue, the words being, “ to his or her brothers and sisters and their representatives.” Thus it again makes the natural connexion a legal one ; not only in admitting of a descent from a bastard to a natural brother or sister, but also from a bastard to a nephew or neice ex parte ma-terna. The act is as clear, that the nephew and niece shall succeed to a bastard, as that the parents of the nephew or niece shall. Docs it not follow, from the principle of the act, that, e converso, there shall be a descent from the nephew or niece to the uncle or aunt ex parte materna. It is to be remembered, that there is no incapacity of half-blood; also, that the incapacity of bastardy is expressly and most materially modified. Not so, indeed, as to abrogate it entirely ; but still, so as to admit, as I think, the case before us. That incapacity ex< eludes illegitimate children, when the mother leaves also legitimate; and it also excludes all collaterals, except when the propositus and the person claiming stand in the relation of brethren or the issue of brethren. More remote collaterals, I yield, are not admitted, but when they are brethren or their legitimate issue, it appears to me, they are within the plain scope of the act. We have just seen, that from a bastard there may be a descent to a nephew or niece ex parte materna. That is within the letter of the act, by force of the words “ their represent *414 atives.” But let us suppose, that those two words had been left out of the 10th rule, and that it had only provided, that is to say, expressly, that there should be a descent from a bastard to his or her brothers and sisters ; yet it is clear, that if a brother or sister had died before the bastard, and left issue, such issue would in that case have come in with the surviving brothers and sisters. That would have been so by force of the third rule, which enacts that the lineal descendants of a person deceased, shall represent their ancestor, and stand in the same place as the person himself would have done, had he been living : and then the 10th rule would add that the lands should descend from a bastard, and be divided among his or her brothers and sisters, “ in the same manner and under the samé regulations and restrictions, as if they had been born in lawful wedlock.” I can hardly think any one would contend, that in the case supposed, the Legislature could mean that the child of a deceased brother of a bastard should not come in with the bastard’s brothers and sisters, or, in case there were no surviving brother or sister, that such nephew or niece should not come in rather than the land should escheat. It seems to me, that, upon every sound principle of construction, the third rule is to be applied to descents under the 10th rule, in the same manner as it is to those under the other canons. Then we have reached this point, that by the act, land owned by Zclia Sawyer would have descended from her to the child of her brother Isaac, if it had not been intercepted by the propositus. And the question remains, whether the brother Isaac or his child is not to succeed to any part of the land of the pro-positus, she being the issue of the same Zelia. It would seem very extraordinary if they are not. They can only be excluded by treating the statute as an act of merely arbitrary legislation in a particular case, and, without reference to any principle whatever — at least as it seems ■to me. In order to test the matter more distinctly, and *415 see who is the heir of a bastard child, let us suppose such child — who is the propositus here — to have inherited land from the mother. To whom does that go? Undoubtedly it would descend to the other children of the bastard mother, or their issue,, if any. No one would say, that it should escheat, to the exclusion of the issue of the person from whom it descended to the propositus. There then is a descent traced through a bastard, the common mother. But it is said, that as brothers are by the common law in the first degree, the descent between them is immediate, and, therefore, that claiming under the statute, they do not count through the bastard mother. That I admit to be truebut it does not remove the difficulty. The question is to whom it is to go, under a fair interpretation of the act, when there is no surviving issue of the parent from whom the land descended. Now it would seem, in reason and the nature of things, that it ought to go back, and that the Legislature would intend it should go back, to the person or persons who would have inherited it from the mother of the propositus, had the latter not been in being. It is upon that rule of reason, and not as a substantive canon of descent, that the principle is founded in the common law, that, as respects descended estates, the line of the parent is the line of the child. It would appear to be an equally sound rule to be applied to the construction of a statute, which, though clear enough as to the principle of it, is defective • in its details. Wilkerson v. Bracken, 3 Ired. 315. I am positively sure in my own mind, that if this land had descended from Mrs. Sawyer to the propositus, it would be the sense of the Legislature, that it should return to the collateral maternal relations rather than escheat; not, indeed, to all the collateral relations, but to such of them as would have taken it from the mother herself, namely, her brother and his issue. What reason can be given, why they should not take from the daughter, land descended to her from her mother, when *416 they would have takfen from her mother herself. It is said because the act provides, in its words, for a descent' from the bastard mother but does not provide for one from her issue. But the object of the act is to gratify the feelings of nature, arising out of near kindred in blood, by admitting of descents between bastard brethren and their issue, as far as it is consistent with the policy of preferring legitimates to illegitimates, and here both sides are legitimates, and we have seen that the land might have descended from Mrs. Sawyer to her brother Isaac or to his child; and that it would have been so by force of the third rule, even' if the words “their representatives” had not been inserted in the tenth rule. Then why shall not the land descend from her child to the same brother, which land came from her to her child? Nay; we see, that, had Isaac Sanderlin been illegitimate and died without issue, land would have descended from him to the propositus or the issue of his sister Tamar: 3Tet, notwithstanding that inheritable blood between them, it is contended that there could not, vice versa, be a descent from her to him. It is true, she could not have inherited from him in this case, because he was legitimate ; but that does not impeach his claim to inherit from her, but rather strengthens it, as the act favors legitimates at the expense of illegitimates. It is said, indeed, by my brethren, that this reasoning is inapplicable to the case before us, because the propositus got the land by purchase from her grand-mother, and not by descent from her mother, and because there cannot be an escheat, since there are paternal relations, who can take. But with deference 1 must say, that it appears to me to be directly applicable ; for the subject of enquiry is, the true construction of the statute, and, therefore, it is proper to consider it, not in reference to the narrow point of a particular case merely, but in reference to every case embraced in it. Therefore, it is indispensable to see how it would be, if there were no paternal relations, and if the land had de *417 scended. to the propositus from her mother. If, in that case, the land would escheat rather than go from Zelia Sawyer’s child to Zelia Sawyer’s brother, as it would have done from Zelia Sawyer herself, then I admit there is an end of the question. But if it is true, as I conceive I have shewn it to be, that, in that case, the law would find an heir for the propositus, in the same person who would have been heir to the mother, from whom the land came 'to the propositus, rather than it should escheat, then it follows, the same person must be a có-heir of purchased land with the paternal relations, according to the fifth rule of descents. For, as before observed, the two rules, the 4th and 5th, govern all collateral inheritances — . the former making descended estates go to the blood of the first purchaser, while there is any; and the latter making purchased land go to the blood of the propositus of both lines, and of the half as well as of the whole blood. Therefore, the case of a descent, from the child of a bastard mother to a maternal uncle, of land descended from the mother, to the exclusion of escheat, is by fair and almost necessary implication, provided for as correlative to the express provision for a descent from a maternal uncle to the legitimate issue of the bastard sister, and as the consequence of the reasonable rule, that land, which comes by descent to one, shall go to the person who would be the heir to him or her from whom it came by descent. But this, being purchased land, goes alike to the legitimate relations on both sides, as I think; and, therefore, in my opinion, the judgment ought to be re-, versed and judgment given for the plaintiff for two undivided thirds of the premises, and for the defendant as to the other third.
Pee Cueiam. Judgment affirmed.